1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9               **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   WILLIAM THOMAS COATS,                No. 2:09-cv-1300-CMK-P

12                 Plaintiff,

13        vs.                                      <u>ORDER</u>

14   MICHAEL FOX,

15                 Defendant.

16   _____/

17             Plaintiff, a state prisoner proceeding pro se, brought this civil rights action

18   pursuant to 42 U.S.C. § 1983.  Pursuant to the written consent of all parties, this case was before

19   the undersigned as the presiding judge for all purposes, including entry of final judgment.  <u>See</u> 28

20   U.S.C. § 636(c).  Pending before the court is defendant's motion for summary judgment (Doc.

21   53).   Plaintiff filed an opposition to the motion (Doc. 56), and defendant file his reply thereto

22   (Doc. 61).

23                              **I.  BACKGROUND**

24   **A.      <u>Plaintiff's Allegations</u>**

25             This case proceeds on plaintiff's original complaint (Doc. 1).  In his complaint,

26   plaintiff alleges he was diagnosed with Hepatitis C in 2007.  While at Deuel Vocational Institute-

Tracy Reception Center (DVI), on May 30, 2008, Dr. Melcher prescribed treatment for plaintiff's Hepatitis C, to start immediately, of Interferon/Ribavirin.  He was again prescribed treatment of Interferon/Ribavirin by Dr. Tan on June 10, 2008.  And again on October 3, 2008, plaintiff was prescribed treatment of Interferon/Ribavirin by Dr. Imperial and Pat Nachin, APRN.  However, defendant Fox interfered with the treatment prescribed, and vetoed the treatment.  The court, reading the complaint liberally, determined plaintiff's complaint states a claim for deliberate indifference in violation of the Eighth Amendment against Dr. Fox, interpreting plaintiff's claims as Dr. Fox deliberately interfering with the treatment prescribed plaintiff.

**B.     Defendant's Evidence**

        Defendant submitted a statement of undisputed fact in support of his motion for summary judgment.  The statement of undisputed facts is supported by defendant's declaration, as well as declarations from Dr. Mendoza and defendant's attorneys of record, with attached exhibits, and a declaration from the custodian of medical records.  The relevant evidence is summarized below:

        <u>Declaration of Defendant Fox</u>

- Dr. Fox declares he is the Chief Physician and Surgeon for Deuel Vocational Institution (DVI); in this position, Dr. Fox has both clinical and administrative duties including seeing patients, answering and signing inmate appeals, authorizing new medication orders, and performing small procedures, as well as chart reviews and auditing.

- Dr. Fox states he found no documentation in plaintiff's medical file indicating he personally treated plaintiff between December 2007 and January 2009.

- Dr. Fox further declares he did not approve any discontinuation order for Interferon and Ribavirin that he could find in the record, nor did he rescind any treatment plans for Interferon and Ribavirin established by specialists.

- Dr. Fox states his name appears on the Medication Administration Records for the Ribavirin at Exhibit B because he was the Chief Medical Officer, and as such his name was sometimes substituted for that of the prescribing doctor.  In addition, the Medication Administration Records simply records the medications an inmate is prescribed and receives; they are not used to order the discontinuation of a medicine.

- Dr. Fox opined in his declaration that plaintiff's medical records evidenced numerous risk factors that weigh against treatment with Interferon and Ribavirin.

- Plaintiff's medical records, dated May 30, 2008, show plaintiff was examined via telemedicine by Gregory P. Melcher, M.D., Clinical Professor of Medicine at UC Davis. Dr. Melcher diagnosed plaintiff with Chronic hepatitis C, Genotype 1a & 2b. His recommendation was to treat plaintiff as genotype 1, obtain a liver biopsy to determine the stage of the disease, which would indicate proper treatment. (Dr. Fox Declaration, Exhibits A-2, A-3).

- Plaintiff's medical records dated October 3, 2008, show plaintiff was examined by Joanne Imperial, MD. Dr. Imperial's recommended orders included no liver biopsy, but treatment with Pegasys, Ribavirin, Polate, Tylenol, CDC, Heptimax, and a return to clinic in 6 weeks with labs. (Exhibit A-9).

- Medical records dated October 27, 2008, record a telephone call from Nurse Annie Cramphon questioning plaintiff only taking Ribavirin and not Pegasys. The consultation notes, which appears to be authored by Pat Nachin, APRN, states: "We had recommended he start Hepatitis C treatment after he was seen in telemedicine hepatitis C clinic. He should have started Pegasys and Ribavirin. On the same day we received a note from Annie Crumphorn stating that the medications would not be started on him until he goes to a permanent facility. He should according to Dr. Michael Fox not be on any meds for Hepatitis C." The record states the Plan to be: "This needs to be looked into by DVI staff tomorrow. He should not be just on Ribavirin without the Pegasys and also he needs all his labs drawn appropriately." (Exhibit A-11).

- Medical records dated October 30, 2008 (originally dated October 29, 2008) indicates Dr. Imperial's recommended ordering to discontinue Ribavirin, Pegasys, and Tylenol, order CBC drawn, and schedule plaintiff for follow-up telemedicine clinic when lab results are available. The recommended order was signed by Dr. Mendoza on behalf of Dr. Imperial. (Exhibit A-12).

- Medication Administration Record print out for plaintiff shows Ribavirin prescription, with Dr. Fox's name printed on the form (no signature), with an original fill date of October 17, 2008, began on October 19. A second Medication Administration Record print out for plaintiff, again with Dr. Fox's name printed on the form (no signature), shows the discontinuation of Pegasys and Ribavirin. (Exhibit B).

Declaration of J. Mendoza

- Dr. Mendoza explains his signature on Dr. Imperial's discontinuation order. He states he signed the order on behalf of Dr. Imperial. He further states that any physician on staff can sign the orders on behalf of the

1    specialist, and the signing physician simply relies on the prescribing doctor
      and does not review the patient's medical records.

2
      •    Dr. Mendoza explains physician orders do not need approval by the Chief
3          Medical Officer to be processed.

4    **C.    Plaintiff's Evidence**

5         Plaintiff contends there is a genuine issue of material facts as to whether

6    defendant Fox ordered the discontinuation of his treatment.  Plaintiff produces several documents

7    presumably from his medical file.  Specifically relevant, he produces a copy of the Medication

8    Administration Record which has Dr. Fox identified as the doctor, the same as the defense

9    produced.  In addition, plaintiff produced a Request for Services form, indicating Dr. Fox

10   ordered a liver biopsy/GI consult to consider on June 3, 2008.

11   **D.    Undisputed Facts**

12        It is clear from the above, that there is no dispute over whether or not plaintiff's

13   treatment was discontinued.  Both parties produced the same medical records, indicating Dr.

14   Imperial recommended treatment to include both Ribavirin and Pegasys.  The Ribavirin

15   treatment was started on or about October 19, 2008, and discontinued on or about October 30,

16   2008.  It appears that there is no dispute over whether or not the Pegasys was ever given, as it

17   appears it was ordered to begin but was discontinued prior to the first injection.  There is also no

18   dispute that Dr. Imperial signed the recommended treatment order.

19                          **II.  STANDARD FOR SUMMARY JUDGMENT**

20        The Federal Rules of Civil Procedure provide for summary judgment or summary

21   adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

22   together with affidavits, if any, show that there is no genuine issue as to any material fact and that

23   the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

24   standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P.

25   56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One

26   of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.

See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

1   any. <u>See</u> Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, <u>see</u>

2   <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed

3   before the court must be drawn in favor of the opposing party, <u>see</u> <u>Matsushita</u>, 475 U.S. at 587.

4   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

5   produce a factual predicate from which the inference may be drawn. <u>See</u> <u>Richards v. Nielsen</u>

6   <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir.

7   1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for

8   the judge, not whether there is literally no evidence, but whether there is any upon which a jury

9   could properly proceed to find a verdict for the party producing it, upon whom the onus of proof

10   is imposed." <u>Anderson</u>, 477 U.S. at 251.

11                                     **III. DISCUSSION**

12   **A.**     **Eighth Amendment**

13         Plaintiff alleges the defendant violated his Eighth Amendment rights by

14   cancelling the treatment which was prescribed him by another doctor. Specifically, plaintiff

15   contends that treatment of his Hepatitis C, including Interferon and Ribavirin, was ordered and

16   began. However, after not even half of the treatments, and no Interferon treatment at all,

17   defendant Fox ordered the cancellation of the treatment, both Interferon and Ribavirin. He

18   argues defendant Fox's involvement and authorization of the cancellation order is evidenced by

19   the pharmacy records.

20         Defendant counters that he did not approve any discontinuation order for

21   Interferon and Ribavirin, that any such orders came from Dr. Imperial. He contends his name is

22   on the pharmacy records, not because he gave the order but due to his position as Chief Medical

23   Officer. In addition, while not clear, defendant seems to be arguing that even if he had ordered

24   the discontinuation of treatment, the treatment plaintiff received was sufficient and did not

25   violate his Eighth Amendment rights.

26   / / /

1   The treatment a prisoner receives in prison and the conditions under which the

2   prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

3   and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

4   511 U.S. 825, 832 (1994).  The Eighth Amendment "embodies broad and idealistic concepts of

5   dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102

6   (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

7   Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

8   "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy,

9   801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only

10  when two requirements are met: (1) objectively, the official's act or omission must be so serious

11  such that it results in the denial of the minimal civilized measure of life's necessities; and (2)

12  subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

13  inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

14  official must have a "sufficiently culpable mind."  See id.

15  Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

16  injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at

17  105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental

18  health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is

19  sufficiently serious if the failure to treat a prisoner's condition could result in further significant

20  injury or the "unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050,

21  1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

22  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

23  is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

24  activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See

25  Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

26  / / /

1          The requirement of deliberate indifference is less stringent in medical needs cases

2    than in other Eighth Amendment contexts because the responsibility to provide inmates with

3    medical care does not generally conflict with competing penological concerns.  See McGuckin,

4    974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

5    decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

6    1989).  The complete denial of medical attention may constitute deliberate indifference.  See

7    Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

8    treatment, or interference with medical treatment, may also constitute deliberate indifference.

9    See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also

10   demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

11         Negligence in diagnosing or treating a medical condition does not, however, give

12   rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a

13   difference of opinion between the prisoner and medical providers concerning the appropriate

14   course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,

15   90 F.3d 330, 332 (9th Cir. 1996).  Similarly, a difference of opinion between medical

16   professional does not amount to deliberate indifference.  See Snow v. McDaniel, 681 F.2d 978,

17   987 (9th Cir. 2012) (citing Sanches v. Vild, 894 F.2d 240, 242 (9th Cir. 1989)).  "To show

18   deliberate indifference, the plaintiff 'must show that the course of treatment the doctors chose

19   was medically unacceptable under the circumstances' and that the defendants 'chose this course

20   in conscious disregard of an excessive risk to plaintiff's health.'"  Id. (Citing Jackson v.

21   McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

22         Here, defendant contends he was not involved in plaintiff's treatment and did not

23   order the discontinuation of treatment.  However, the evidence he supplies in support of that

24   contention is inconclusive at best.  Defendant attempts to explain why his name is on relevant

25   medical records, indicating that as Chief Medical Officer his name is sometimes substituted for

26   the ordering doctor.  However, other than his own declaration, he provides no supporting

1  evidence.  For instance, there is no declaration from the custodian of records indicating that the

2  computer generates such a record and that is the normal course of action in such circumstance.

3  Even if there was such a declaration, given the medical records plaintiff has supplied indicating

4  that at least to some extent Dr. Fox appears to have been directly involved in his treatment for

5  Hepatitis C, whether or not the explanation for Dr. Fox's name on the pharmacy records is

6  sufficient to overcome the inference would be a judgment call for a jury to determine.

7         Next, defendant appears to contend that even if he was to have ordered the

8  discontinuation of plaintiff's treatment, such action was not a violation of plaintiff's rights as

9  there was no damage resulting therefrom.  Whether or not there was damage resulting from the

10  discontinuation of treatment would be a question for a jury.  Such a determination is not

11  dispositive of the claim of deliberate indifference, and would require a finding of fact.

12         It is clear from the evidence submitted, that plaintiff suffers from Hepatitis C.

13  Treatment for plaintiff's Hepatitis C was ordered and started, but was then discontinued prior to

14  the full treatment being received.  There is no explanation as to why treatment was discontinued.

15  It is questionable whether evidence produced by defendant Fox is sufficient to meet his burden of

16  demonstrating the absence of a genuine issue of material fact.  Even if the evidence is sufficient,

17  plaintiff has produced sufficient evidence to establish that a genuine issue as to any material fact

18  actually does exist as to whether or not Dr. Fox was involved in the decision to discontinue

19  plaintiff's treatment.  It is certainly conceivable that a jury could determine that based on Dr.

20  Fox's apparent involvement in plaintiff's treatment, he could have ordered the treatment stopped

21  either directly or through plaintiff's treating physician.  But that is a question of fact for a jury to

22  determine.  The court, upon a motion for summary judgment, does not resolve questions of fact.

23  **B.    Qualified Immunity**

24         Defendant Fox also contends that he should be granted qualified immunity.

25         Government officials enjoy qualified immunity from civil damages unless their

26  conduct violates "clearly established statutory or constitutional rights of which a reasonable

1   person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general,

2   qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

3   law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified

4   immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting

5   the injury, the facts alleged show the defendant's conduct violated a constitutional right.  See

6   Saucier v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask

7   whether the right was clearly established.  See id.  This inquiry "must be undertaken in light of

8   the specific context of the case, not as a broad general proposition . . . ." Id.  "[T]he right the

9   official is alleged to have violated must have been 'clearly established' in a more particularized,

10  and hence more relevant, sense:  The contours of the right must be sufficiently clear that a

11  reasonable official would understand that what he is doing violates that right."  Id. at 202

12  (citation omitted).  Thus, the final step in the analysis is to determine whether a reasonable

13  officer in similar circumstances would have thought his conduct violated the alleged right.  See

14  id. at 205.

15          When identifying the right allegedly violated, the court must define the right more

16  narrowly than the constitutional provision guaranteeing the right, but more broadly than the

17  factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667

18  (9th Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be

19  sufficiently clear that a reasonable official would understand [that] what [the official] is doing

20  violates the right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the

21  court concludes that a right was clearly established, an officer is not entitled to qualified

22  immunity because a reasonably competent public official is charged with knowing the law

23  governing his conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even

24  if the plaintiff has alleged a violation of a clearly established right, the government official is

25  entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his .

26  . . conduct did not violate the right."  Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir.

1   2001); see also Saucier, 533 U.S. at 205.

2           The first factors in the qualified immunity analysis involve purely legal questions.

3   See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal

4   determination based on a prior factual finding as to the reasonableness of the government

5   official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court

6   has discretion to determine which of the Saucier factors to analyze first.  See Pearson v.

7   Callahan, 555 U.S. 223, 236 (2009).  In resolving these issues, the court must view the evidence

8   in the light most favorable to plaintiff and resolve all material factual disputes in favor of

9   plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

10          Here, defendant argues no constitutional rights were violated, therefore he is

11  entitled to qualified immunity.  He also contends that a reasonable person in is position could

12  have believed his conduct was lawful because it was medically appropriate to cancel plaintiff's

13  treatment.

14          The issue is whether the defendant was deliberately indifferent to plaintiff's

15  medical needs by the termination of treatment.  The Eighth Amendment's right to adequate

16  medical care is clearly established.  See Estelle, 429 U.S. at 105.  Taken in the light most

17  favorable to plaintiff, the court cannot find that it is undisputed that defendant Fox was not

18  personally involved in plaintiff's treatment, or the discontinuation thereof.  That is a factual

19  determination for the jury.  If plaintiff's condition required treatment, and such treatment was

20  prescribed then prematurely terminated, there is no basis for the court to determine the

21  defendant's conduct did not violate plaintiff's Eighth Amendment rights.  In addition, again in

22  the light most favorable to plaintiff, the court cannot say that a reasonable doctor in similar

23  circumstances would not have thought his conduct violated the alleged right.  Providing inmates

24  with appropriate and necessary medical care is required under the Eighth Amendment. Whether

25  or not the treatment prescribed plaintiff was appropriate and necessary is a factual determination

26  for the jury to make.  As to defendant's claim for qualified immunity, the court finds it likely that

1   a reasonable doctor in a similar circumstance would have known or realized terminating

2   treatment could have violated plaintiff's Eighth Amendment rights by denying plaintiff necessary

3   treatment under these circumstances.  Thus, defendant Fox is not entitled to qualified immunity.

4                                    **IV.  CONCLUSION**

5               The undersigned finds a genuine issue as to material facts remain which must be

6   resolved by a jury.  Defendant fails to meet his burden to show no undisputed material facts exist.

7   It is for a finder of fact to determine whether the evidence sufficiently shows Dr. Fox was

8   personally involved in the decision to discontinue plaintiff's treatment.  As such, the motion for

9   summary judgment must be denied.

10              Accordingly, IT IS HEREBY ORDERED that defendant's motion for summary

11  judgment (Doc. 53) is denied.

12

13   DATED:  September 29, 2014

14

15                                          **CRAIG M. KELLISON**
                                            UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26